**C. G. BENHAM, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 14657.**

United States Court of Appeals
Fifth Circuit.

Sept. 3, 1954.

Muckleroy McDonnold, San Antonio, Tex., George O'Brien John, Houston, Tex., Leonard Brown, San Antonio, Tex., for appellant.

Charles F. Herring, U. S. Atty., Thomas E. James, Asst. U. S. Atty., Austin, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and WRIGHT, District Judge.

RIVES, Circuit Judge.

The appellant was tried upon an indictment containing four counts, each charging that he did wilfully and knowingly attempt to defeat and evade income taxes in violation of Section 145 (b), Title 26, United States Code. The indictment included two counts for each of the years 1946 and 1947, covering the separate returns filed by the defendant and by his wife. The jury found the defendant not guilty under the two counts covering the year 1946, but guilty under the third and fourth counts covering the year 1947. The court sentenced the defendant under the third count to imprisonment for a period of three years and to pay a fine of $5,000.00, and under the fourth count to one year imprisonment and a fine of $5,000.00, the sentence to begin at the expiration of the sentence under the third count. A motion for new trial having been overruled, this appeal followed. Of the numerous specifications of error, we find it necessary to discuss but two.

■ The first specification questions the sufficiency of the evidence to support the verdict as to each count. The defendant moved for a judgment of acquittal at the close of the Government's evidence, but failed to move for a judgment of acquittal at the close of all the evidence. Upon such a record the appellate court will not consider the objection that the verdict is not supported by the evidence except to prevent a miscarriage of justice. Ansley v. United States, 5 Cir., 135 F.2d 207, 208; Battle v. United States, 92 U.S.App.D.C. 220, 206 F.2d 440, 441; Demetree v. United States, 5 Cir., 207 F.2d 892, 894.

■ The Government sought to convict the defendant by proving increases in his net worth corroborated by evidence showing specific items of income not reported. Without detailing the evidence, we think it sufficient to say that, insofar as the third count is concerned, in our opinion the evidence of the Government if believed by the jury sustains the verdict of guilty. On the other hand,

there was no evidence to support a conviction under the fourth count charging that the defendant "did wilfully and knowingly attempt to defeat and evade a large part of the income tax due and owing by the said Ethel H. Benham to the United States of America for the calendar year 1947, by filing and causing to be filed with the Collector of Internal Revenue * * * a false and fraudulent income tax return for and on behalf of the said Ethel H. Benham * * *." While the returns show on their face that the joint community income of the husband and wife was determined and divided in half for tax purposes, that fact alone does not suffice to establish that the husband either filed or caused to be filed the wife's separate return. That return was not signed by the husband, but was signed by the wife and by the accountant who prepared it, and the evidence is entirely consistent with the theory that they were the only ones responsible for its filing. The husband's erroneous records may have accounted for the errors in the wife's return, but the crime was not complete until the return was filed, and to be guilty under the fourth count the husband must either have filed his wife's return or have caused it to be filed. There is no evidence that he did either. The sentence, however, under each count was separate, and the defendant would still be subject to the specific sentence under count three if the record were otherwise free from error. Blitz v. United States, 153 U.S. 308, 318, 14 S.Ct. 924, 38 L.Ed. 725.

■ The argument of counsel for the Government is set out in full in the record. The defendant interposed no objections and made no motions to instruct the jury to disregard any part of the argument, but appeals for reversal on the ground that improper argument was so grossly prejudicial that the harm could not be removed by objections or instructions, and that under such circumstances there was no duty on the part of a defendant in a criminal case to move for a mistrial. After careful consideration, we are constrained to agree with the ap-

pellant's position. A few illustrative excerpts from the argument are set forth in the footnote.[1]

■ Each case stands upon its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial. It sometimes becomes the duty of the trial judge to stop counsel's discourse without waiting for an objection. Viereck v. United States, 318 U.S. 236, 248, 63 S.Ct. 561, 87 L.Ed. 734; De Bonis v. United States, 6 Cir., 54 F.2d 3, 5. Whenever this Court is of the opinion that a defendant has been denied a fair trial, it must set aside the judgment of conviction.

" 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may

1. "Let's see if we can tell a little more about Mr. Benham here. Let's look at these postcards that he had, that we introduced into evidence. He was advertising—he was even advertising himself as being an attorney at law. I don't think that man can have much scruples, and I think the evidence before you reflects that."

\* \* \* \* \*

"Let's look a little further. He required from people who borrowed money from him to sign an agreement—the agreements are in evidence—releasing him from usury charges—usury, gentlemen, prohibited by the Constitution. Now, why would he have those signed if he weren't in the usury business?"

\* \* \* \* \*

"He is the kind of a man who, in the course of his operations, buys notes at fifty per cent, sells them to an unsuspecting investor in second lien notes at a hundred per cent. He is not satisfied with a hundred per cent profit on his investment. No, he reserves a portion of the piddling interest that those notes drew and takes that away from his investors. And, in addition to that, he charges those investors the accrued interest up to the day the notes transferred. Now, what does he do about recording those transfers to his investors? He makes those investors sign an agreement that they won't let the borrower know that they own the note, and that they will not record it so that the public may scrutinize it. That's the kind of man he is, gentlemen."

\* \* \* \* \*

"You can call him by another name, but he is still a loan shark by my book, and every man in Travis County will agree to that. That's the kind of man you are

dealing with. I think that is significant in determining whether or not he has an intent to evade."

\* \* \* \* \*

"The defendant is seeking, as is not unusual, to lay off his guilt here on women folks—these three women that took the stand—or dead people. He doesn't have the courage to come up before you and say, 'Yes, I did it.' "

\* \* \* \* \*

"I have talked some here about Benham, a loan shark, a man of no principle, in my judgment, a man that charged three hundred per cent interest on notes to poor devils buying second-hand cars; such a man, to my mind, was not a good man."

\* , \* \* \* \*

"But, gentlemen, you can see his tracks. You can follow his modus operandi, if you will, mode of operations, over the years, see the kind of man he is, see that he's the sort of man, in my judgment, who will do a thing like this. This is a man who would evade his taxes, beat anything he thought he could get by with. He has had time to figure it out in the shadow of Pike's Peak in Colorado. He is a shrewd and cunning man with no principle, in my judgment."

\* \* \* \* \*

"In my judgment, if you turn this man loose, what you are going to be doing by your verdict is encouraging people who hear about what you have done, to do the same thing. There is too much of it, gentlemen. It's got to be stopped. You and other honest taxpayers have to make up the difference that the tax evaders fail to pay. If this man had evaded $250,-000 worth of taxes over the years, the government is going to have to have the money, and you are going to have to pay it. Somebody is."

strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.' Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. Compare New York Central R. Co. v. Johnson, 279 U.S. 310, 316, 318, 49 S.Ct. 300, 302, 303, 73 L.Ed. 706." Viereck v. United States, supra, 318 U.S. at page 248, 63 S.Ct. at page 566.

The prosecuting attorney's argument could be ever so vigorous so long as it was confined to the issue of the defendant's guilt or innocence of the crime charged against him; but the indirect reference to the defendant's failure to testify, the appeals to prejudice against the defendant as a usurer, and to the jurors' selfish interests effectively deprived the defendant of a fair trial and make necessary a reversal of the judgment of conviction and a remand of the case for a new trial.

Reversed and remanded.