H. A. LOTT, Lee Blocker and Lorn D. Frazier, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17888.

United States Court of Appeals Fifth Circuit.

Sept. 25, 1962.

Certiorari Denied Jan. 7, 1963.

See 83 S.Ct. 504.

C. W. Wellen, Leroy Denman Moody, W. V. Ballew, Jr., C. Anthony Friloux, Jr., John H. Crooker, Joe S. Moss, William M. Ryan, Walter E. Workman, Houston, Tex., for appellants, Fulbright, Crooker, Freeman, Bates & Jaworski, Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel.

Joseph M. Howard, Atty. Dept. of Justice, Washington, D. C., Myron M. Sheinfield, Asst. U. S. Atty., Houston, Tex., Woodrow B. Seals, U. S. Atty., William B. Butler, Asst. U. S. Atty., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Fred L. Hartman, Asst. U. S. Atty., for appellee.

Before TUTTLE, Chief Judge, and POPE * and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The three appellants and two others were charged in a five count indictment with attempting to evade and defeat income taxes of a named corporation. The first four counts are substantive and relate to the years 1951, 1952, 1953 and 1954 respectively. The fifth count charged a conspiracy to evade and defeat the same corporation's income tax for the years 1951 to 1954 inclusive. After entering pleas of not guilty, and after careful and cautious consideration by the court, each of the appellants was permitted to withdraw his plea of not guilty and enter a plea of nolo contendere. Following the pronouncement of sentence and the entry of formal written judgments, motions in arrest of judgment were filed by each appellant. The motions were denied and thereupon the appellants appealed.

Sentencing of the appellants was deferred after they were allowed to enter pleas of nolo contendere. The Government strongly objected to the nolo contendere pleas. During the period of deferment, the trial judge who had accepted the nolo contendere pleas presided over a lengthy trial of the defendants Farnsworth, the two others who had been jointly indicted with the appellants. One of the two was acquitted and the jury was unable to agree on a verdict as to the other. Thereafter, on June 19, 1959, the same trial judge sentenced the appellants. The appellant Blocker was sentenced to 3 years to be served; and appellants

* of the Ninth Circuit, sitting by designation.

Frazier and Lott were each sentenced to 2 years to be served, under each count, the sentences to run concurrently. Each appellant was fined the total sum of $20,-000.00. The appellants owned a total of 7% of the stock of the company. Blocker was Treasurer and both Frazier and Lott were Vice Presidents.

Although their contentions are separately presented, the alleged errors relied on by Blocker and those relied on by Lott and Frazier are essentially the same and may be summarized as follows:

1. The indictment is insufficient.

2. Delay in sentencing resulted in a denial of due process.

3. The court was without jurisdiction to impose sentences on the pleas of nolo contendere after hearing the evidence presented at the trial of the other two jointly indicted defendants.

4. Defects in the formal written judgment of the court.

We will deal with each of these contentions separately. As part of the history of this case, reference is made to Lott et als. v. United States, 5 Cir., 1960, 280 F.2d 24; Id., 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961).

I

*The Indictment*

It is contended that the indictment does not apprise the appellants of "the nature and cause of the accusation" within the meaning of the Sixth Amendment to the United States Constitution and does not charge all the basic elements of the offense of attempting to evade and defeat corporate income taxes. The first 4 counts are substantive and are essentially the same except as to the amounts therein mentioned and the years involved. Each of these counts relates to a separate year. The fifth count charges conspiracy and relates to all of the years involved. While it is admitted that the indictment is framed in the words of the statute, it is contended that the statute is so vague that the appellants cannot determine the nature of the charge against them with sufficient certainty to enable them to make a defense or to avoid further prosecution for the same offense.

It is true that offenses must be accurately described in an indictment; and if necessary to do so, the allegations must be expanded beyond the words of the statute in order to embrace all the ingredients necessary to the offense. U. S. v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1876); Babb v. U. S., 5 Cir., 1955, 218 F.2d 538; U. S. v. Debrow, 5 Cir., 1953, 203 F.2d 699.

As examples of the contention made, the appellants cite U. S. v. Strauss, 5 Cir., 1960, 285 F.2d 953, holding that in a prosecution against a corporate officer for alleged fraudulent transfer of corporate property in contemplation of bankruptcy, the indictment was defective because it did not set forth " * * * a plain, concise and definite statement of the offense * * * ", failed to identify the property, and from aught appearing the transfer was made in the usual and regular conduct of the business; and Clay v. U. S., 5 Cir., 1955, 218 F.2d 483, in which it was held that an allegation of liability for tax coupled with a failure to pay was insufficient to constitute a felony violation, because there must be some affirmative act on the part of the defendant showing an attempt to evade the tax. The court observed that all that was alleged was that the defendants were engaged in the business of accepting wagers without having paid the occupational tax, which was only a conclusion unsupported by allegations of facts showing a willful attempt to evade, and therefore the indictment was insufficient.

The Clay case, supra, was discussed by this court in the later case of Reynolds v. U. S., 5 Cir., 1955, 225 F.2d 123:

"That indictment (Clay) alleged the quo modo, it charged the attempt to evade the occupational tax 'by engaging in the business of accepting wagers * * * without having paid said occupational tax * * *'.

On the other hand, the indictment in the present case pleads the offense substantially in the language of the statute, which is an approved mode of pleading with the single exception of an instance where the words of the statute do not contain all the essential elements of the offense. That exception can have no application here unless it be held that Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 [infra] added a substantive element to those contained in the statute defining a similar offense; and that is not true, for the Spies case simply construed the statutory language, 'willfully attempts in any manner to evade or defeat any tax * * *.' 26 U.S. C.A. § 145(b), I.R.C.1939. Indeed, in income tax cases, it has been stated that an indictment need not specify the means whereby the defendant attempted to evade and defeat the tax. Information as to the particular means employed may be obtained by a bill of particulars."

Also U. S. v. Simmons, 96 U.S. 360, 24 L.Ed. 819 (1878) in effect held that it was not necessary to state in the indictment the particular means by which the United States was defrauded of the tax. The defendant is entitled to a formal statement of the grounds upon which he is charged, but the Government is not held to such strictness of averments as might defeat the ends of justice. As there observed:

"Such intent may, however, be manifested by so many acts upon the part of the accused, covering such a long period of time, as to render it difficult, if not wholly impracticable, to aver, with any degree of certainty, all the essential facts from which it may be fairly inferred."

A similar question arose in Capone v. U. S., 7 Cir., 1932, 56 F.2d 927, and the court concluded:

"But it is contended by appellant that the indictment should have specified the means by which he attempted to evade or defeat the payment of the tax. Neither the Cruikshank Case nor any other case which we have been able to find supports this contention. In the Cruikshank Case it was stated that all rights are not guaranteed by the Federal Constitution, and that therefore, as a matter of law, a charge of conspiracy to defeat a citizen's constitutional right must show that the right threatened is one conferred by the Constitution. In other words, if a certain right is excepted in the definition of the crime, facts must be pleaded to avoid the exception.

"But in the instant case there are no exceptions, for the statute says that every attempt to evade or defeat the payment of income tax is a violation of law. What was a question of law in the Cruikshank Case, by reason of existing exceptions, is in the instant case a question of fact for the jury because of the absence of exceptions."

■ The indictment in the instant case goes further than merely charging the offense in the words of the statute. It expressly alleges various means by which the appellants attempted to evade the taxes such as falsifying invoices, concealing assets and diverting income. We cannot agree with the appellants that the means alleged are not adequate because of a failure to state in specific detail how these actions could result in underpayment of taxes of the corporation. Spies v. U. S., 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943) discusses the statute involved and points out distinctions between subsection (a) and (b) of § 145; subsection (a) being a misdemeanor and subsection (b) a felony:

"Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine it with a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony.

" * * * By way of illustration, and not by way of limitation, we would think affirmative willful at-

tempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."

Appellants contend that the indictment is deficient in failing to show that there was an understatement of the tax or a tax deficiency, citing Lawn v. U. S., 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 and Small v. U. S., 1 Cir., 1958, 255 F.2d 604. Count one alleges that the net income of the corporation for the calendar year 1951 according to the tax return filed was the sum of $399,135.98 and that the amount of tax due thereon was the sum of $194,482.66; whereas, the defendants then and there well knew that the net income of the corporation for the calendar year 1951 was $763,699.62 upon which the corporation owed the United States a total tax of $482,278.96 in violation of § 145(b) of the Internal Revenue Code of 1939. The other substantive counts contained essentially the same type of allegations for each of the years involved, but of course the figures are different for each year. A reading of the indictment indicates no absence of the elements complained about, and alleges the requisite knowledge and intent required. U. S. v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Cave v. U. S., 8 Cir., 1947, 159 F.2d 464.

Another defect is claimed to be that the indictment is defective in failing to charge that any of the appellants filed the return. Benham v. U. S., 5 Cir., 1954, 215 F.2d 472, concluded that proof of filing the return was necessary to the completion of the offense denounced under the facts of that case. There, the defendant was charged with attempting to defeat and evade the tax of his wife *"by filing and causing to be filed"* a false return on her behalf. Appellants take

the point that the allegation of "mailing and causing to be mailed", does not satisfy this requirement. This question is dealt with in Imholte v. U. S., 8 Cir., 1955, 226 F.2d 585, in which the defendant was convicted of aiding and abetting an attempt by the President of the corporation of which the defendant was General Sales Manager, to defeat and evade a large part of the income taxes owed by the corporation. It was held that the indictment was sufficient even though it failed to allege that the defendant had anything to do with filing the return, the substantive offense being the willful attempt to evade and defeat the payment of the tax. In U. S. v. Albanese, 2 Cir., 1955, 224 F.2d 879, the indictment alleged in part as follows: " * * * preparing, causing to be prepared, and causing to be mailed in the Southern District of New York and by filing and causing to be filed with Collector of Internal Revenue in Albany, a false and fraudulent return." It was there contended that since the returns were filed in Albany, the indictment should be dismissed, because the venue was in the Southern District of New York. The court held that the actual filing was not an essential allegation and stated:

> "The defendant's entire course of conduct in the Southern District of New York from preparing false records to the mailing of false returns, came within the ambit of the 'attempts' statute and venue was proper."

The crime denounced by 26 U.S.C.A. § 145(b) is an attempt *in any manner* to defeat or evade any tax. We conclude that the allegations in the indictment here under consideration in the language " * * * mailing or causing to be mailed * * *" is sufficient. United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943). It is not necessary to prove that each defendant took hold of the envelopes containing the returns and helped place them in the post office when mailed.

■■ Finally, appellants assert that the conspiracy count fails to charge the basic elements of the substantive offense. U. S. v. Strauss, 5 Cir., 1960, 283 F.2d 155. It is contended that the indictment here constitutes a mere statement of a conclusion of the pleader that acts done in connection with the conspiracy were in violation of the statute; and that the facts alleged fail to support the charge. Wong Tai v. U. S., 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927) concludes that an indictment charging a conspiracy to commit a crime need not allege with technical precision all the 'elements essential to the commission of the offense, which is the object of the conspiracy, or to state such object with the details required of an indictment charging the substantive offense. To the same effect is Braverman v. U. S., 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), wherein it is succinctly stated:

"A conspiracy is not the commission of the crime which it contemplates, and neither violates nor 'arises under' the statute whose violation is its object." (citing cases)

As pointed out in Jelke v. U. S., 7 Cir., 1918, 255 F. 264, an indictment for conspiracy is sufficient if it follows the language of the statute and contains a sufficient statement of an overt act or overt acts, except where the object of the conspiracy is lawful but the means unlawful.

The appellants urge upon us the holding on the recent case of U. S. v. Goldberg, (D.C.E.D.Pa.1962) 206 F.Supp. 394. In that case, the district judge held that there cannot be a single conspiracy to evade and defeat income taxes pertaining to two separate taxable years, " * * * because of the criminal intent necessary for the substantive offense of attempted tax evasion, we conclude that a single conspiracy embracing two separate taxable years is impossible." The court then concludes as follows:

"It follows that persons can conspire to evade a tax only if they are fully aware of the existence of a tax obligation to the Government which they seek to conceal. Since income taxes become due and payable on an annual basis, it seems manifest that persons cannot at one and the same time conspire to evade more than one year's taxes."

It is claimed that the Goldberg case presented a question of first impression.

We cannot accept the reasoning in the Goldberg case nor the fact that it presents a question of first impression. All cases are distinguishable on the facts, but the case of U. S. v. Johnson, et al., 7 Cir., 1941, 123 F.2d 111, 123 (reversed on other grounds 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546 (1943)) had under consideration the same principles involved here. In Johnson, the fifth count of the indictment charged all of the defendants with a conspiracy extending from January 1, 1936 for the years 1936, 1937, 1938 and 1939 inclusive, to defraud the United States of income taxes due from Johnson. The court held the indictment good. It is interesting to note that the lower court held the first four counts defective as being inconsistent and duplicitous. They were considered inconsistent because the offense against Johnson was charged as of March 15th of each year; whereas, the co-defendants "as aiders and abettors" were charged with an offense which extended over a longer period. The counts were considered duplicitous by the Court of Appeals because it was alleged that the co-defendants aided and abetted Johnson both before and after March 15th of the relevant year. Accordingly, the court concluded that the co-defendants were charged in the same count as accessories before and after the fact. In reversing the Court of Appeals, (319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546) the Supreme Court held:

"In short, the Circuit Court of Appeals read the substantive counts as though they charged Johnson merely with the filing of false returns on March 15th. That may only be a misdemeanor under § 145(a) of the Internal Revenue Code, but that is not the offense with which Johnson was charged. He was charged with a felony made so by § 145(b), the

much more comprehensive violation of attempting 'in any manner to defeat and evade' the payment of an income tax. The false return filed on March 15th was only one aspect of what was a process of tax evasion. And all who contributed consciously to furthering that illicit enterprise aided and abetted its commission and thereby, under § 332 of the Criminal Code, became principals in the common enterprise. Therefore, nonparticipation in merely one phase of Johnson's attempted evasion, namely, the filing of a false return on March 15th, is in itself irrelevant, and it is equally irrelevant that the aid which the co-defendants gave Johnson continued after March 15th as well as preceded it. The crime of each of the first four counts is the wilful attempt to evade the payment of what was due to the revenue. All who participated in that attempt were contributors to the illicit enterprise. There was only one offense in each count, and all who shared in its execution have equal responsibility before the law, whatever may have been the different rôles of leadership and subordination among themselves. There is neither inconsistency nor duplicity in these four counts and the demurrers to them were properly overruled."

Although revenue laws were not involved in Frankfort Distilleries, Inc. v. U. S., 10 Cir., 1944, 144 F.2d 824, 832 (reversed on other grounds and conviction in district court sustained, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945)), the principles of law relating to conspiracy are correctly stated in our judgment:

"The several acts and means of making the conspiracy effective are related acts which enter into the crime, but still the single crime is that of combining and conspiring together to restrain interstate trade and commerce, or to monopolize such trade and commerce. Duplicity in an indictment means the charging of two or more separate and distinct offenses in one count, not the charging of a single offense into which several related acts enter as ways and means of accomplishing the purpose. Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; United States v. New York Great Atlantic & Pacific Tea Co., supra [5 Cir., 137 F.2d 459]."

We conclude that the conspiracy indictment in this case is not subject to the attack made upon it.

## II

### *Denial of Due Process*

Appellants complain that the delay in sentencing was unreasonable in the circumstances of this case and resulted in depriving them of due process of law. Two of the appellants entered pleas of nolo contendere on March 17 and the other on March 20, 1959. Two other defendants jointly indicted with the appellants (Farnsworth) entered pleas of not guilty. Appellants were called for sentencing on June 19, 1959. The delay in sentencing was occasioned by the Farnsworth trial before the same judge. One of the Farnsworths was acquitted and there was a hung jury as to the other.

Appellants rely on Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), which reversed the sentence of a state court as being inconsistent with due process. In Townsend, the defendant was held virtually incommunicado for a period of 40 hours after his arrest, during which time he was constantly and vigorously interrogated. He did not have the advice of counsel and when the trial court imposed sentence, it relied upon a record of various crimes allegedly committed by the defendant, all of which had either been dismissed or the defendant had been found not guilty. The court was misled as to the facts. In Pollard v. U. S., 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), the defendant was given probation in absentia and two years later was apprehended for violation of his probation. Sentence was then passed on his previous plea of guilty. It was there

pointed out that whether delay in completing the prosecution amounts to an unconstitutional deprivation of rights, depends on the circumstances in each case. The delay must not be oppressive or calculated to deny substantial rights to the defendant.

The present rule 32(a) F.R.Crim.P., 18 U.S.C.A., which provides that sentence should be given without unreasonable delay, is a restatement of the previously existing procedure. See Rule 1 of Criminal Appeals Rules 1933, 292 U.S. 661, 78 L.Ed. 1513. Berkowitz v. United States, 8 Cir., 1937, 90 F.2d 881, concluded that the above mentioned rule of the Supreme Court requiring sentence without delay, was not adopted for the benefit or protection of the accused and therefore he cannot complain that the sentence shall not begin until 30 days from the date of its pronouncement. 28 U.S.C.A., Rule 1 following § 723a. See also Pratt v. U. S., C.C.A.D.C.1939, 102 F.2d 275 holding failure to impose sentence during term in which conviction was had does not defeat jurisdiction to sentence at a later term; Miller v. Aderhold, 288 U.S. 206, 210–212, 53 S.Ct. 325, 77 L.Ed. 702, holding that delay in imposing sentence, regardless of the length of delay, does not deprive the trial court of jurisdiction, where the defendant raises no objection; Miner v. U. S., 3 Cir., 1917, 244 F. 422, concluding that the rule requiring prompt sentences does not change the law relative to jurisdiction, but was adopted to expedite criminal cases; Bankey v. Sanford, (D.C.N.D.Ga.1947) 74 F.Supp. 756, deciding that after a plea of guilty, it is discretionary with the court as to when sentence should be imposed; U. S. v. Provoo, D.C., 17 F.R.D. 183 (1955) and cases cited in footnote 19, holding that a right to a speedy trial may be waived and is waived unless demanded by the accused.

As stated in Pollard, the delay involved must be considered in the light of the circumstances surrounding the case. In the case at bar, it is stated in the final reply brief for all of the appellants, although admittedly not shown by the record, that counsel for Appellant Lott, when considering a change of plea from not guilty to nolo contendere, requested the court to sentence Lott prior to the trial of the two defendants who pled not guilty. The brief further states, "It is also true that the trial judge refused to grant this request." While we do not purport to decide this case on matters not of record; even if we did, it is apparent that Appellant Lott proceeded to tender his plea of nolo contendere notwithstanding the refusal of the trial judge to grant his request for early sentence.

■■ We see no impropriety, indiscretion, injury or denial of any rights whatever by the delay of approximately 90 days between the time the pleas were entered and sentence pronounced. Before the pleas were entered, the court acted with great caution and all that transpired was in the presence of the appellants and their learned counsel. Notwithstanding this fact, the court was careful to inquire of the appellants individually as to whether each had separately decided to enter the plea voluntarily and made certain that the plea was not prompted by any promises which had been made. The court warned the parties of the seriousness of the charge and explained to each appellant that the charge was willful tax evasion. They were warned not to expect leniency and that the sentence might be five years confinement in addition to a large fine. Over the objection of the Government, the court accepted the pleas, and directed a pre-sentence investigation "for sentence at conclusion of entire case". When the appellants were called for sentencing, no motion or request for permission to withdraw the pleas was made and the tenor of their statements was approval of their former decision to enter the plea and a confession of their improper conduct. Appellate courts must assume, in the absence of anything in the record to the contrary, that delay in pronouncing sentence was for a lawful purpose in the orderly process of handling the case. Indeed, the record here does not require any inference or presumption, because

the record clearly shows, without question, that the delay was proper, lawful and completely justified in the circumstances of this case.

## III

### Loss of Jurisdiction Under Pleas of Nolo Contendere

Appellants have much to say about their pleas of nolo contendere and the meaning which it carries. The definition which they seem to prefer is that "nolo contendere is a mere statement of one's unwillingness to contest and no more." Mickler v. Fahs, 5 Cir., 1957, 243 F.2d 515, 517; Piassick v. United States, 5 Cir., 1958, 253 F.2d 658. It is admitted that there may be an adjudication of guilt in the sense that judgment of conviction may be entered on a plea of nolo contendere. For the purposes of this case, we have no trouble with the insistence of the appellants. Reasoning further, they complain that "conviction on a plea of nolo contendere" does not permit the court to receive or consider evidence in the case before the court, or any other related case, "from which it will independently determine the extent of the defendant's guilt or *culpability* as a basis for imposing sentence or punishment";

and that such a plea "operates to preclude judicial inquiry as to all matters of fact arising under the allegations contained in the indictment".[1] From the position thus taken, the appellants then conclude, or at least strongly intimate, that the court considered all of the evidence presented during the Farnsworth trial in deciding upon the sentence to be given these appellants. They indicate that the court should have made some limiting statement as to the evidence it had heard during the Farnsworth trial. In view of the fact that there was some mention of the Farnsworth trial at the time sentence was passed, it is concluded that the appellants were tried in absentia. Pressing further, it is contended that the plea of nolo contendere was thereby rejected and the court lost jurisdiction of the case to enter a judgment of conviction and to sentence the appellants.

■ We are unable to follow this reasoning process. The record is somewhat to the contrary. We find no improper statements by the court in the record and nothing to indicate that the court demonstrated any impropriety or gave consideration to any improper facts at the time sentence was imposed.[2]

1. Quotations from first reply brief of Appellant Lott. Although different language is used, essentially the same contention is made by all of the appellants.

2. The following excerpts are from the record:

"Court: Does the Government have anything to say to the Court at this time before I call on the defendants to tell me whatever they want to say or their lawyers or friends want to tell me in their behalf?

"Mr. Schwartz: Your Honor, I believe the Court has heard the facts tried following these gentlemen's pleas.

"If it please the Court, at the conclusion of the defendant's statements if there are any matters which are called upon for an answer, we would respectfully request permission to answer them then, but we think there is no other statement called for in the case.

"The Court: I will not say that I will at this time.

I will call the first on the docket, Mr. Blocker first, and then Mr. Lott and Mr. Frazier." (Tr. pp. 488–9)

\* \* \* \* \*

"Mr. Crooker: Your Honor, you have been good enough not to limit our number of witnesses. You said you would listen as long as we put them on.

"The Court: Until exhaustion.

"Mr. Crooker: I want to be fair. I have a couple more, but aside from strictly character witnesses I want to use Mr. Brigman on a few brief facts independent of character, and I believe I am going to forego the others, but unless Your Honor wants to question them I shall not offer them.

"The Court: It is your own ruling." (Tr. pp. 502–3)

Following is from statement to the court by Appellant Blocker:

"I have made some mistakes in these matters, and as I say for some time now I have recognized that fully, and I want to make that very clear to Your Honor

In this aspect of the case the insistence of the appellants is clearly erroneous.

The shoe is on the other foot. The court gave every consideration requested by the

that I do recognize it. Looking back over what went on, I am sorry that when things were presented in an improper manner that I didn't just leave the services of the company and find employment elsewhere, but hindsight is—it is just a matter of hindsight, and it is hard to lean on that at his time.

"I will say this, today, and as far as anything in the future is concerned, I would definitely leave the services of a company before I would ever do anything, if called upon, in an improper manner.

"I am not attempting at this time in any way to whitewash what I have done in the past. For quite a long time now I have been tortured more, much more, than could possibly be done by what would be done in a Court. I own up to any improprieties that may have been permitted to exist.

"The Court: Is there any doubt in your mind about that, you used the word 'might'?

"Mr. Blocker: There is no doubt at all, Your Honor. I didn't intend to use that word.

"There are improprieties that exist.

"There is one other thing that occurs to me that you might wonder about, why if I had objection to accounting irregularities, as I pointed out, why would I have let some amount of work be done by the company out at my house in 1951, which I did at that time." (Tr. pp. 521–2)

＊　　＊　　＊　　＊　　＊

"I would like to say though that I filed a plea of nolo contendere with the effect of throwing myself on the mercy of the Court, and what I have said here today is to reaffirm that, and I have not regretted what I have done.

"The Court: You mean the irregularity part or the nolo plea?

"Mr. Blocker: That I have not regretted filing the nolo plea, Your Honor." (Tr. p. 523)

Mr. Crooker (of counsel) speaking to the Court:

"Mr. Crooker: I wanted to say something, but I hadn't expected the occasion to arise so quickly. What I wanted to say, Your Honor, is two or three things about the matter.

"I wanted to remark to Your Honor what you doubtless know without my suggesting it to you or reminding you of it, that any man who enters a plea of nolo contendere, there are wonderful advantages to it. If I were doing it today

I would do just exactly that, I would advise these clients of ours to do precisely what they did, and knowing that I am going to say about it is intended to not take anything from exactly what they did here in open Court. They are standing by it and so am I.

"I make that remark, although don't think it is necessary to do it, but when a trial goes on in the absence of any man, even though it was set up that way himself, and with his lawyer, too, but it goes on and we do not know what was brought out—

"The Court: Right on that point, counsel, didn't you have this young man present every day and every hour taking down notes?

"Mr. Crooker: Yes, I have everything, a daily report and everything that I had. That is not what I was going to suggest. I know what exactly was testified, in substance. He is not a shorthand reporter. We didn't buy a copy of it. We did buy one witness, I think, but we have a daily report." (Tr. pp. 524–5)

Following is statement to the Court by Appellant Lott:

"Mr. Moody: Your Honor, Mr. Lott would like to address the Court.

"Mr. Lott: Judge, I realize that I have made a great mistake and that I should have had the courage to have gotten out in 1953 when some of the younger fellows did.

"The Court: That could be the first statement of remorse or repentance that I have heard during these last eleven weeks. Maybe I did hear, but I don't remember. Go ahead.

"Mr. Lott: I had worked for Farnsworth & Chambers Company and Farnsworth originally all of my life, and frankly I didn't know anything else.

"I realize that I made a great mistake and I shall never recover from it, and I shall never make a mistake again." (Tr. pp. 531–2)

Mr. Moody (of counsel) speaking to the Court:

"I will be brief as possible, and I will not go over a rehash of the evidence that the Court sat through for nine weeks and heard. Certainly our pleading nolo did not contribute to the length of the trial, and we had hoped this thing would be over sooner, but it was not." (Tr. p. 533)

Mr. Ballew (of counsel) speaking to the Court:

"This man has made some great mistakes while at the company. He has

appellants. In the first place, the court was not bound to accept the pleas of nolo contendere, especially in view of the objection by the Government. At the time the plea was entered, the appellants were warned in great detail and after ordering a pre-sentencing investigation, in effect stated that sentence would be imposed at the conclusion of the entire case. Counsel for the Government made slight reference to the Farnsworth trial and did not cross-examine the appellants' character witnesses. The court imposed no limitation on any of the appellants as to the number of character witnesses offered, and permitted full statements by both counsel and appellants. Two of the appellants made statements to the court. As a matter of fact, reference made by counsel for the appellants to the Farnsworth trial is far more extensive than any reference made by the court or counsel for the Government. As to this contention, we cannot better state our conclusion now than to quote from the decision of this court when the case was here on another question (5 Cir., 280 F.2d 24, 28–29):

"In considering the contention of the appellants that they were sentenced upon a determination of guilt based upon the evidence at the trial of the other defendants rather than upon their pleas of nolo contendere, a look at the record becomes desirable. What happened is this; during the

proceedings for sentencing the court heard statements of counsel for the appellants seeking mitigation of punishment. In these statements references were frequent to matters which transpired at the trial of the other defendants. It was brought out that counsel for the appellants had a representative at the trial, taking notes, and reporting to counsel so that they knew, in the words of one of the attorneys 'exactly what was testified, in substance.' Two of the three appellants made statements on behalf of themselves. Character witnesses numbering five, seven, and five, for the respective appellants, testified. At the conclusion of the hearing the court stated, 'I have found each guilty of the felonies as contained in the grand jury indictment.' Then followed an oral pronouncement by the court of the sentences. This hearing was on June 19, 1959. On June 22, 1959, the court entered, as to each appellant, a formal judgment and commitment. From them we quote:

" 'It is adjudged that the defendant has been convicted upon his plea of nolo contendere of the offense of * * * and the Court having asked the defendant whether he has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the Court,

---

not tried to deny them. He feels that it has been a bitter shame on his family.

"I have every confidence that this man has learned a rather bitter lesson.

"Let me say by way of mitigation, when we got into this criminal aspect of his life, it was in August of 1957 and we did not see this dark cloud coming at any time until the day before. He insisted upon talking to Mr. Gromatzky. At that time I think I was the one lawyer in the firm most closely associated with Mr. Lott, and it was I that went to Dallas to see the Internal Revenue Service on his behalf and later went to Washington, D. C." (Tr. pp. 539–40)

    *     *     *     *     *

"I personally know that this man made a bad decision back in '52 and '53. He is

ashamed of what he did then, and he is regretful that he didn't get out of the company like Frank Glass did and Louis Spaw." * * * (Tr. p. 541)

Dr. E. H. Westmoreland, a witness called on behalf of Lott speaking to the Court:

"The Witness: I would like to say that every member of our congregation would come here as a witness in his behalf, and they would say he is one of the cleanest Christian men we have ever known.

"The Court: But none of them were present during the ten weeks of testimony, were they?

"The Witness: Not that I know of, sir." (Tr. pp. 550–1)

" 'It is adjudged that the defendant is guilty as charged and convicted.'

"We need not consider whether the judgment was the oral pronouncement of sentence or the formal writing. Cf. Pollard v. United States, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed. 2d 393; United States v. Hark, 320 U.S. 531, 64 S.Ct. 359, 88 L.Ed. 290; Patterson v. United States, 5 Cir., 1950, 183 F.2d 687; Spriggs v. United States, 9 Cir., 1955, 225 F.2d 865. In neither the oral sentence nor the formal judgment does it appear that the determination of guilt is based upon the trial of the other defendants. Any such conclusion is negatived by recital in the formal judgment that 'the defendant has been convicted upon his plea of nolo contendere.' We see no merit in this contention of the appellants."

## IV

### *The Judgment of the Court*

█  At the conclusion of the statements and evidence offered by the appellants, the court made the following oral pronouncement: "I have found each guilty of the felonies as contained in the Grand Jury indictment." In its formal written judgment, the court refers to the offenses as " *  *  * the offenses of filing false and fraudulent income tax returns  *  *  *" and " *  *  * conspiracy to file false and fraudulent income tax returns". Immediately following these statements by the court in the formal written judgments is the specific statement that the appellants had violated the felony provisions relating to willfully attempted evasion—§ 145(b), 1939 Code and § 7201, 1954 Code, 26 U.S.C.A. § 7201. The judgments make no specific reference to § 145(a) of the 1939 Code and §§ 7203 and 7207 of the 1954 Code, 26 U.S.C.A. §§ 7203, 7207, which are the

misdemeanor sections. Based on the misuse of language in the characterization of the offenses in the formal written judgments, the appellants insist that they were convicted of misdemeanors, but given sentences as provided in the felony sections. It is clear to us that the record clearly demonstrates that the intent of the district judge was to sentence appellants for the felonies for which they had been indicted. Such was the oral pronouncement of the court and regardless of the characterization of the offenses, the judgments show they were convicted of violating the felony sections as charged in the indictment. The error is almost self-correcting and it is certainly nothing more than a clerical error. This clerical error properly may be called to the attention of the trial judge, if the appellants desire to do so, under the provisions of F.R.Crim.P. No. 36,[3] which authorizes the correction of such errors by the sentencing court at any time. Costello v. United States, 252 F.2d 750, 751 (C.A. 5th); Tseung Chu v. Cornell, 247 F.2d 929, 932 (C.A.9th); Ex parte Sherwood, 177 F.Supp. 411, 413 (Ore.), certiorari denied, 363 U.S. 851, 80 S.Ct. 1631, 4 L.Ed.2d 1734.

█  As a matter of fact, under the provisions of Rule 35, the court may correct an illegal sentence at any time; and may reduce the sentence within 60 days after receipt by the court of a mandate issued upon affirmance of judgment or dismissal of the appeal. Needless to say, the reduction of a valid sentence after affirmance is within the discretion of the trial court. Substantial time has elapsed since the appellants were sentenced. No doubt, the distinguished trial judge has given consideration to the sentences imposed. Considerations based on compassion and mercy are to be determined by the trial court.

As stated by this court in Benham v. U. S., (1954) 5 Cir., 215 F.2d 472:

---

3. "Rule 36. Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omis-

sion may be corrected by the court at any time and after such notice, if any, as the court orders."

"Each case stands upon its own peculiar facts and circumstances as to whether a defendant has been afforded a fair trial."

We have carefully reviewed the record and the numerous briefs filed in this case. We are convinced that all of the appellants were accorded every legal consideration to which they were entitled. We understand their disappointment, but the sentences received are not the maximum. Commendably, counsel for the appellants, in the highest traditions of advocacy, loyalty to the interest of their clients, and with a firm determination to press every conceivable point, have done everything possible for these appellants. The record not only shows that competent attention and advice were given to each appellant, but under the careful guidance of the court when the pleas were entered, and at the session of the court when sentences were pronounced, each appellant individually approved all action taken with full knowledge of the possible consequences.

The judgment is

Affirmed.