*George CHOUNG, Petitioner,*

v.

**PEOPLE OF the STATE OF CALIFORNIA, Respondent.**

**Civ. No. S–1417.**

United States District Court,
E. D. California.

Oct. 30, 1970.

Karlton & Blease, Sacramento, Cal., for petitioner.

Thomas C. Lynch, Atty. Gen., Sacrameno, Cal., for respondent.

## MEMORANDUM AND ORDER

MacBRIDE, Chief Judge.

George Choung petitions this court for a writ of habeas corpus under 28 U.S.C. § 2241 alleging numerous Constitutional defects in the state statute and court proceeding which resulted in his conviction under California Penal Code § 602.-9,[1] disrupting a school campus. Under my disposition of the petition, however, I consider only the question of whether the state's accusatory pleading gave sufficient notice of the charge to withstand scrutiny under due process. For reasons which will become apparent, I grant petitioner's writ and order his immediate release.

The facts upon which I base my decision are relatively simple and not in dispute. Petitioner learned that a number of students at Sacramento High School planned to walk out of classes in protest of allegedly discriminatory teaching methods. Although warned by the principal, Ulric Morley, that he was not welcome on campus, petitioner nevertheless entered the school grounds and participated in the student walkout. A few days later, the principal signed a criminal complaint charging petitioner and two others with a violation of California Penal Code § 602.9, *supra.* Under California law, the complaint was framed substantially in the terms of

1. California Penal Code § 602.9 has since been changed to § 626.8, and it will be referred to by its new designation. The statute reads as follows:

§ 626.8 *Disruptive presence at schools*

(a) Any person who comes into any school building or upon any school ground, or street, sidewalk, or public way adjacent thereto, without lawful business thereon, and whose presence or acts interfere with the peaceful conduct of the activities of such school or disrupt the school or its pupils or school activities, and who remains there, or who reenters or comes upon such place within 72 hours, after being asked to leave by the chief administrative official of that school or any designated agent of the chief administrative official who possesses a standard supervision credential or a standard administration credential or who carries out the same functions as a person who possesses such a credential or, in the absence of the chief administrative official, the person acting as the chief administrative official, is guilty of a misdemeanor and shall be punished as follows: * * *.

(b) As used in this section:

(1) "School" means any elementary school, junior high school, four-year high school, senior high school, adult school or any branch thereof, opportunity school, continuation high school, regional occupational center, evening high school, or technical school.

(2) "Lawful business" means a reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance.

the statute and became the accusatory pleading in the ensuing Sacramento Municipal Court prosecution.[2]

Upon a demurrer to the complaint, the municipal court judge rejected petitioner's argument that the complaint failed to adequately notify him of the prohibited conduct. After jury trial and conviction resulting in a 90-day jail sentence and a $600.00 fine, petitioner appealed to the Appellate Department of the Superior Court, which also rejected his argument and refused to certify the case for further appeal. Petitioner then received a stay of execution to seek habeas corpus relief in the state appellate courts, both of which denied the writ without comment.

Having received a further stay until November 20, 1969, to seek relief in the federal courts, petitioner filed his writ of habeas corpus in this court on November 18, 1969. I issued an order to show cause on November 20, 1969, and further ordered a stay of execution under the authority of 28 U.S.C. § 2251.[3]

## THIS COURT HAS JURISDICTION TO ENTERTAIN PETITIONER'S WRIT OF HABEAS CORPUS

Under 28 U.S.C. § 2241(c) (3), federal courts have jurisdiction to entertain writs of habeas corpus only if the petitioner is "in custody" in violation of the laws or Constitution of the United States. Since petitioner is not now incarcerated, the Attorney General of California argues that this court lacks jurisdiction to issue a writ. I find the contention without merit.

 While at one time federal judges might well have insisted on actual incarceration before exercising their authority to free state prisoners under the "Great Writ," recent decisions make clear that the "in custody" requirement is to be liberally construed. See Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); Walker v. Wainwright, 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215 (1968); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). Although Jones v. Cunningham is not directly controlling because it involved the availability of a writ to a state prisoner released on parole, its language is worthy of consideration:

> History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus. * * * Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose —the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty.

In this spirit, I find that petitioner is indeed "in custody" within the meaning of § 2241.

Petitioner filed this writ with two days remaining on his state court stay of execution,[4] and I issued my own stay under § 2251 only hours before the expiration of the state stay. The only obstacle now standing between petitioner's "freedom" and the state's imminent

---

2. The relevant California statutes are §§ 691, 740 and 952 of the Penal Code.

3. § 2251. *Stay of State court proceedings*
 A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void.

4. In this regard, the case of Nash v. Purdy, 283 F.Supp. 837 (S.D.Fla.1968), is clearly relevant. Judge Cabot ruled that release from custody under a state stay of execution issued by the state judge does not deprive the district court of its habeas corpus jurisdiction.

threat of incarceration therefore, is my earlier stay order. While I find no controlling authority, it is inconceivable that this court could deprive itself of jurisdiction by exercising its authority under § 2251 to free petitioner from immediate physical imprisonment. The fact that petitioner was forced to seek a federal stay order to fend off state incarceration is itself a significant restraint "not shared by the public generally." To reach a contrary result would not only thwart the salutary effect of federal stay orders and undermine the availability of the "Great Writ," but would also render it a "narrow, formalistic remedy" contrary to the clear implications of Jones v. Cunningham.

None of the cases cited by the state requires a contrary conclusion. Without deciding the extent to which Stallings v. Splain, 253 U.S. 339, 40 S.Ct. 537, 64 L.Ed. 940 (1920) and Unverzagt v. United States, 5 F.2d 494 (9th Cir. 1925) have been undermined by recent Supreme Court decisions (see Sokol, Federal Habeas Corpus 69 (2d ed.)), it is sufficient to point out that both of those cases involved substantially different facts. Nor is the recent Ninth Circuit opinion in Keys v. Dunbar, 405 F.2d 955 (1969) apposite, since there the petitioner had already served his sentence and been unconditionally discharged at the time he filed his suit.

I conclude, therefore, that this court has jurisdiction to entertain the petition for writ of habeas corpus. I now pass to a consideration of petitioner's substantive claim.

## THE COMPLAINT UNDER WHICH PETITIONER WAS CONVICTED FAILED TO NOTIFY HIM ADEQUATELY OF THE CHARGE

■ Petitioner was tried and convicted under the following accusatory complaint, worded substantially in the language of California Penal Code § 626.-8:

The People of the State of California, upon oath of Ulric Morley Complain against the Defendant above named,

for the crime of misdemeanor, to-wit: Violating Section 602.9 of the Penal Code committed as follows: That on the 22nd day of March, 1968, and within limits of the City of Sacramento, in the County of Sacramento, in the State of California the said Defendants above named did then and there, before the filing of this complaint, and within one year prior thereto, willfully and unlawfully come into a school building, to wit: Sacramento Senior High School and upon the school grounds adjacent thereto without lawful business therein or thereon and did, by the presence and acts of them and each of them interfer [sic] with the peaceful conduct of the activities of said school and did disrupt said school and its pupils and the activities of said school, and said Defendants and each of them did remain in said school building and upon said school grounds after being asked to leave by the chief administrative official of said school, to wit: ULRIC MORLEY.
\* \* \*

For reasons which follow, I rule that the phrase "without lawful business therein or thereon" renders the complaint too vague to notify petitioner of the specific charge to be defended, in violation of the Constitution.

■■ A fundamental principle of due process of law requires that the accused in a state or federal prosecution be informed in advance of trial of the specific charges which he must defend. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948); Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948); People v. Pond, 44 Cal.2d 665, 284 P.2d 793 (1955); People v. Saffell, 74 Cal. App.2d Supp. 967, 168 P.2d 497 (1946). While the states have wide latitude to develop their own criminal procedures, they must still afford the accused this basic Constitutional right. Garland v. Washington, 232 U.S. 642, 34 S.Ct. 456, 58 L.Ed. 772 (1914). Like many states, California allows its accusatory pleadings to be worded in the language of the statute. California Penal Code § 952.

Such a pleading withstands a due process attack, however, only if the language of the statute from which it is taken sets forth fully, directly, and expressly all essential elements of the crime. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); Babb v. United States, 218 F.2d 538 (5th Cir. 1955); Van Liew v. United States, 321 F.2d 664 (5th Cir. 1963); United States v. Donovan, 339 F.2d 404 (7th Cir. 1965); Lott v. United States, 309 F.2d 115 (5th Cir. 1962) ("It is true that offenses must be accurately described in an indictment; and if necessary to do so, the allegations must be expanded beyond the words of the statute in order to embrace all the ingredients necessary to the offense.")

From the foregoing principles, it is apparent that the dispositive issue of this case is whether pleading the statutory phrase "without lawful business" itself gives sufficient notice of the charge to be defended. Since there are no reported decisions construing the statute, I will accept the state trial judge's interpretation that the phrase "without lawful business thereon" requires the accused to have had the specific intent to enter the school grounds for a purpose prohibited by another statute, ordinance, or regulation; that is, for an unlawful purpose. Under this interpretation, the accused need not actually commit an offense so prohibited while on campus, but he must have *intended* to do so at the time of entry.[5]

Counsel for neither side has directed me to controlling authority, and my own exhaustive search has netted no decision discussing the precise problem presented here. There are a number of cases, however, which have considered somewhat similar problems. In Babb v. United States, *supra*, the court held that an in-dictment charging the defendant with transporting cattle and knowing them to have been imported "contrary to law" was fatally defective for failing to allege "some fact or facts showing that the cattle in question were imported or brought in contrary to some law; and that it is not enough to say that they were imported or brought in 'contrary to law.'" See also Steiner v. United States, 229 F.2d 745 (9th Cir. 1956). Similarly, in State v. Elkins, 216 Or. 509, 339 P.2d 715 (1959), the Supreme Court of Oregon sustained a demurrer to an indictment, charging maintenance of an establishment where persons congregated for the purpose of "unlawfully" drinking liquor on the ground that it failed to inform the defendants of the crime with which they were charged, since it did not disclose in what particular the patron's acts were contrary to statute.

California courts have also dealt with similar issues. In People v. Clenney, 165 Cal.App.2d 241, 331 P.2d 696 (1958), the accusatory pleading was framed in the words of California Vehicle Code § 501, making it a felony for an intoxicated driver to do "any act forbidden by law" which results in personal injury. The court held that the information failed to give adequate notice of the charge without a specific reference to the other illegal act. See also People v. Pond, *supra.*

While each of the discussed cases is perhaps distinguishable from the precise problem now at issue, together they enunciate a clearly applicable principle. An accusatory pleading must be more specific than a statute which defines a material element of the offense by a blanket reference to other forbidden acts.

This case readily exemplifies the evil sought to be prevented by the rule. Although the purpose for which the peti-

5. The trial judge reached this conclusion on the basis of the statute's legislative history (see Cal.Assn.Jour., July 7, 1967 at 5028–30) and the following amendment to P.C. § 602.9, passed but not yet effective at the time of trial: "'Lawful business' means a reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance."

tioner entered the campus was a crucial element of the offense, the complaint did not aver which statute or regulation, among a potentially infinite number, the petitioner intended to violate. "A cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief issue undefined." Russell v. United States, *supra*. Like the indictment condemned in *Russell*, petitioner's complaint "left the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." Notwithstanding petitioner's repeated demands for the statutes upon which the prosecution hoped to prove entry "without lawful business," the state did not reveal its "theory" [6] that petitioner entered the campus for the purpose of causing, or tending to cause, minors to become habitual truants until the close of its case. Certainly, none but the clairvoyant would have known before trial that such a theory would become a key issue upon which the jury would be instructed at length.[7] Had the complaint alleged in some manner [8] the precise law or regulation which petitioner entered the campus for the purpose of violating, it would have fulfilled due process requirements. Additionally, it might have provided the basis from which petitioner could have tested the sufficiency of the complaint to support a conviction.[9] In-

---

6. It is interesting that the state's prosecutor explained to the judge at the close of the state's case that the issue of lawful business could go to the jury on either of two "theories." Neither "theory" had been revealed before this time.

7. The trial judge took judicial notice of Penal Code § 272 and Welfare and Institutions Code § 601, set forth below, and instructed the jury on them concerning the issue of lawful business.

 § 272. *Causing, encouraging or contributing to delinquency of persons under 21 years; inducing disobedience to court order; punishment*

 Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 21 years to come within the provisions of Sections 600, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of 21 years or any ward or dependent child of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of Sections 600, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding one thousand dollars ($1,000), or by both such fine and imprisonment in a county jail, or may be released on probation for a period not exceeding five years. The district attorney shall prosecute all violations charged under this section.

 § 601. *Minors habitually refusing to obey parents; habitual truants; minors in danger of leading immoral life*

 Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person or any person who is a habitual truant from school within the meaning of any law of this State, or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court.

8. I do not decide the precise manner in which the state should have notified petitioner that it would rely on Penal Code § 272 and Welfare and Institutions Code § 601 to establish unlawful "business."

9. The theory of the prosecution was that under Penal Code § 272 and Welfare and Institutions Code § 601 it did not have to prove that the purpose for which petitioner entered campus would have actually resulted in habitual truancy, but only that it would tend to have this effect. This theory, however, has apparently been rejected in Mandel v. Municipal Court, *infra*.

stead, it utterly failed in its primary obligation of notifying the petitioner of the precise nature of the accusation.

I find support for the conclusion I reach in a recent California opinion, Mandel v. Municipal Court, 81 Cal.Rptr. 173 (Cal.App.1969). There, the defendant was charged in a complaint, worded in the terms of California Penal Code § 653g, which alleged that he "did then and there become a vagrant within the meaning of said section [653g] in that said defendant did loiter about a school and public place at and near which school children attend * * *." Under the accepted judicial interpretation of § 653g, loitering near a school is actionable only if done "for the purpose of committing a crime as opportunity may be discovered." In re Cregler, 56 Cal.2d 308, 14 Cal.Rptr. 289, 363 P.2d 305 (1961). Although the complaint did not alleged which crime the defendant hoped to commit, a "crime report" attached to the complaint and incorporated therein by reference alleged that the defendant passed out leaflets urging students to boycott classes. On this basis, the prosecution contended that the defendant was loitering about the school for the purpose of contributing to the delinquency of a minor, contrary to Penal Code § 272. The court held, however, that "If the petitioner is to be required to defend against a charge of loitering with intent to contribute to the delinquency of the students by encouraging their truancy, such a charge should have been framed more directly than by the innuendo developed from a phrase in the leaflet." The present case, of course, is even stronger than Mandel, since petitioner's complaint does not even contain an "innuendo" that he encouraged students to become habitual truants.

Petitioner's conviction failed to measure up to due process. Accordingly, a writ of habeas corpus must issue.

It is so ordered.