[Crim. No. 37010. Second Dist., Div. Three. Oct. 2, 1980.]

In re RUDOLFO A., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RUDOLFO A., Defendant and Appellant.

COUNSEL

Michael J. Udovic, under appointment by the Court of Appeal for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**POTTER, Acting P. J.**—Rudolfo A., a minor, appeals from the judgment sustaining a petition under Welfare and Institutions Code section 602 and placing him home on probation. The petition alleged that he "did willfully and unlawfully trespass upon the grounds of a public school, to wit, Cleveland High School, thereby violating Section 63.94 of the Los Angeles Municipal Code, a Misdemeanor."[1]

Rudolfo's demurrer to the petition was overruled and there was an adjudication hearing at which several witnesses testified. The testimony showed that on the day of the alleged offense, there was a fight in front of Cleveland High School during the noon hour, involving a dozen or more youths. The battleground included a parking lot and the front lawn of the school. Several of the participants were seen to arrive together in a single vehicle and though Rudolfo was not identified as one of this group, he was later observed to be one of a group of several youths seen fleeing the scene together, none of whom were Cleveland

---

[1]Section 63.94 of the Los Angeles Municipal Code provides: "No person shall use or occupy or play in or upon, or trespass in or upon the grounds of any public school in this City. This section shall not apply to children occupying or playing in or upon the grounds of such school in the presence and under the supervision of a teacher connected with such school or of some other authorized person."

students. The security officer who made this observation saw several of them stop and throw objects back toward the lawn. He "couldn't be sure" that Rudolfo threw anything because "[t]here was so many of them—there was a large group. There was approximately ten of them." The following questions and answers relating to Rudolfo followed:

"Q. What was the—what did Rudolfo throw?

"A. I couldn't tell you.

"Q. Did he have anything in his hands?

"A. I couldn't tell you that either because I didn't stop to notice which ones were throwing what. I knew they were all throwing things."

Rudolfo's demurrer to the petition was argued after the presentation of the evidence at the adjudication hearing. One of the arguments made in support of the demurrer was that the Los Angeles Municipal Code section 63.94 suffered from First Amendment overbreadth. Commenting on this claim, the court said that it would be without merit "if we were to say that this particular minor on the state of the evidence, is not there to express free speech" and added "I think there is ample evidence at this point that the state of the evidence would indicate that the minor in concert with others, did come upon the school ground for the purpose of fighting." The court thereafter overruled the demurrer and sustained the petition.

### Contentions

Rufolfo contends that section 63.94 of the Los Angeles Municipal Code is unconstitutional because: (1) "it is in conflict with a general law" which "fully occupies the field," and (2) "it is vague and therefore has violated the minor's rights to due process of law."[2]

---

[2]Rudolfo's further contention urged in the trial court that the municipal code section suffered from First Amendment overbreadth is abandoned, apparently on the ground that the court found a total lack of any First Amendment purpose for Rudolfo's presence on the Cleveland campus. Though we do not agree that the evidence indicating that Rudolfo came "upon the school ground for the purpose of fighting" was such as to justify a reasonable trier of fact in finding beyond a reasonable doubt that that was his purpose (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738]), it is fair to state that there is no basis in the evidence for the assumption that Rudolfo was "there to express free speech."

The People contend that there is no preemption by state law, that Rudolfo "lacks standing to assert due process violations,"[3] and that the municipal code section "is not unconstitutionally vague and over-broad."[4]

## Discussion

### Summary

The general laws with respect to trespass upon school grounds do not preempt the field so as to preclude local regulation of trespassory conduct thereon. However, Rudolfo's demurrer to the petition should have been sustained. Los Angeles Municipal Code section 63.94 imposes a criminal sanction for "trespass in or upon the grounds of any public school." It does not, however, define "trespass." There are numerous statutes regulating trespassory conduct on school yards which criminalize various conduct. The charge of "trespass" therefore failed to inform defendant of the offense with which he was charged.

### State Law Has Not Preempted the Field of Regulating Trespassory Conduct on School Grounds

The preemption issue in this case is governed by the decision of our Supreme Court in *In re Cox* (1970) 3 Cal.3d 205 [90 Cal.Rptr. 24, 474 P.2d 992], which upheld the power of the City of San Rafael to enact an ordinance making it an offense to remain upon "business premises after being notified by the person in charge thereof to remove therefrom." (*Id.*, at p. 209.) The entire discussion of the preemption issue is pertinent to this appeal. It is as follows (*id.*, at pp. 218-220): "In this section we consider, but reject, petitioner's contention that San Rafael Municipal Code section 8.12.210 violates the California Constitution in that it attempts to impose additional strictures in the field of trespass

---

[3]As developed in respondent's brief, this contention, insofar as it bore on Rudolfo's due process argument, was based upon the proposition quoted from *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 58-59 [49 L.Ed.2d 310, 319, 96 S.Ct. 2440], that "even if there may be some uncertainty about the effect of the ordinances on other litigants, they are unquestionably applicable to these [litigants]."

[4]The People thus met Rudolfo's due process vagueness argument on its merits and did not rely upon Rudolfo's failure to specify this ground as a basis for the demurrer. We reject as untimely the People's belated attempt in their petition for rehearing to assert waiver of the due process grounds. The People are not prejudiced inasmuch as sustaining the demurrer will not foreclose filing of an amended petition.

which the state Legislature has preempted by general law. If state law had thus preempted the ordinance, petitioner, regardless of the facts of the case, could not properly have been prosecuted under the ordinance.

"In considering this question of preemption we must begin our analysis with two constitutional provisions: Article XI, section 7 (formerly Cal. Const. art. XI, § 11), of the California Constitution provides that: 'A county or city may make and enforce within its limits all local, police, sanitary and other ordinances and regulations not in conflict with general laws.' Section 5(a) of article XI (formerly Cal. Const. art. XI, § 6) provides that chartered cities may 'make and enforce all ordinances and regulations in respect to municipal affairs, subject only to the restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws.'

"In regulating trespassory conduct, the Legislature has enacted numerous statutes. They include Penal Code sections 365, 415, 418, 419, 420, 553-555.3, 558-558.1, 587-587b, 592, 593b, 602, subdivisions (a)-(n), 602.5, 647, subdivisions (g)-(i), 647c; Fish and Game Code, sections 2016, 2018; Health and Safety Code section 8101; Military and Veterans' Code sections 398, 1650, 1651; Water Code section 1052; and Civil Code section 51. Despite this impressive array of laws, the state has significantly failed to prohibit a would-be customer, after being requested to leave, from remaining on business premises generally open to the public.

"Petitioner contends that these statutes constitute a comprehensive legislative scheme completely regulating trespasses on property. Moreover, he argues that the Legislature has enacted trespass provisions which, completely protecting the valid interests of property owners from unauthorized presence of intruders, fully occupy the constitutionally permissible scope of such legislation. Finally, petitioner contends that although San Rafael, as a chartered city, enjoys a home rule provision and retains complete power to legislate in regard to municipal affairs, it may not enact a trespass ordinance in an area in which 'the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.' (*In re Hubbard, supra,* 62 Cal.2d 119, 128; see *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535, 539 [86 Cal.Rptr. 673, 469 P.2d 353]; *Galvan v. Superior Court* (1969) 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930]; *In re Lane* (1962) 58 Cal.2d 99, 106

[22 Cal.Rptr. 857, 372 P.2d 897]; *Abbott* v. *City of Los Angeles* (1960) 53 Cal.2d 674, 681-682 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].)

"In the case of conflict between a state enactment which discloses an intent fully to occupy the field, and a local ordinance of a chartered home rule city, the question may arise whether the matter is a municipal affair or one of statewide concern. (See *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 62-63 [81 Cal.Rptr. 465, 460 P.2d 137].) (See fn. 18.) In the present case, however, we do not reach that issue, inasmuch as *the Legislature has expressly evidenced its intent in Penal Code section 647c to permit local regulation of 'conduct upon a street, sidewalk, or other public place on or in a place open to the public.'* (See *Baron* v. *City of Los Angeles, supra,* 2 Cal.3d 535, 539; *Bishop* v. *City of San Jose* (1969) *supra,* 1 Cal.3d 56, 63-64.) Furthermore, trespass has long been an area in which local units have legislated; such an area may involve special local problems of facilities and geography with which a state Legislature could cope only with difficulty. In *In re Hoffman, supra,* 67 Cal.2d 845, 848-851, we recognized that municipalities have a governmental interest in preserving the proprietary interests of non-commercial property owners from intrusions upon their privacy, and in protecting all property owners from obstructions of their property's use (see *In re Zerbe* (1964) 60 Cal.2d 666, 670 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]). [Fns. omitted.]" (Italics added.)

The situation in the case at bench is indistinguishable. In addition to the numerous statutes "regulating trespassory conduct" listed by the court in *Cox* (several of which apply to school yards), the following additional general statutes specifically apply to trespassory conduct in respect of school grounds: Penal Code sections 653g, 626.2, 626.4, 626.6, 626.8, 626.9, 626.10; Education Code sections 32210, 32211. This "impressive array of laws" (*In re Cox, supra,* 3 Cal.3d at p. 219) criminalizes a wide variety of conduct on school yards, including unlawful fighting, disturbing others or provoking an immediate violent reaction (Pen. Code, § 415), refusing to leave or returning after a direction to do so based upon disruption of school activities or reasonable cause to believe that such has occurred or is threatened (Pen. Code, §§ 626.2-626.8), bringing firearms or dirks, daggers, knives or razors onto school grounds (Pen. Code, §§ 626.9-626.10), loitering with intent to commit a crime (Pen. Code, § 653g),[5] willfully disturbing any public

---

[5]Though Penal Code section 653g does not specify this requirement, it has been added by implication to preserve its constitutionality. (*People* v. *Hirst* (1973) 31 Cal. App.3d 75 [106 Cal.Rptr. 815].)

school meeting (Ed. Code, § 32210),[6] and failing to leave or returning after having been requested to do so by school authorities "on the basis that it appears reasonable... to conclude that the continued presence of the person requested to depart would be disruptive of, or would interfere with, classes or other activities of the public school program" (Ed. Code, § 32211, subd. (a)).

An examination of all the foregoing applicable statutes fails to disclose any legislative intent to foreclose local regulation. The only such legislative expression found anywhere in the laws governing trespassory conduct is that of Penal Code section 555.4 which is in an article dealing with trespassing or loitering near posted industrial property. In respect of such trespassing, it is provided: "The provisions of this article are applicable throughout the State in all counties and municipalities and no local authority shall enact or enforce any ordinance in conflict with such provisions." However, as pointed out in *Cox* in respect of trespassory conduct in public places, Penal Code section 647c clearly evidences the legislative intent "to permit local regulation." (3 Cal.3d at p. 220.)

Further evidence of this intent is found in Education Code section 32211, subdivision (g), criminalizing the failure to leave public school buildings or grounds promptly pursuant to a request based upon reasonable belief that a continued presence would be disruptive of the school program. Subdivision (g) provides in that respect: "Nothing in this section shall be construed as preempting any ordinance of any city, county, or city and county."

The general laws thus fail to prohibit unauthorized entry or presence on school grounds except under particular circumstances above delineated. Specifically, in the area of conduct of which Rudolfo was suspected, criminal trespass comprises actual fighting on the school grounds, presence there with the intent so to violate the law, willfully disturbing the school, or returning thereto in defiance of a directive from the school administration based upon actual or threatened disruption of the school program. As the First District noted in *In re Christopher S.* (1978) 80 Cal.App.3d 903, 911 [146 Cal.Rptr. 247]: "The Legislature, in criminalizing the failure to leave, has indicated that in the absence of some express criminal act committed on the

---

[6]Former Education Code section 16701, which contained the same text, was held unconstitutional in *Castro v. Superior Court* (1970) 9 Cal.App.3d 675, 704 [88 Cal.Rptr. 500].)

premises, there is to be no criminal punishment of one who complies with the direction or request to leave merely because he was technically a trespasser." This is consistent with the policy stated in Education Code section 40048, which makes a civic center of each and every public school building and ground where "citizens...may meet and discuss, from time to time, as they may desire, any subjects and questions...." Education Code section 40049, however, recognizes the propriety of local regulation of such use to the end that it "shall in nowise interfere with the use and occupancy of the public schoolhouse and grounds, as is required for the purposes of the public schools of the state."

We conclude from the foregoing that although an arbitrary exclusion of all citizens from school premises by local ordinance would conflict with the policy of our Legislature, some regulation, based upon "special local problems," is permissible. We, therefore, do not invalidate Los Angeles Municipal Code section 63.94, on the ground of preemption by general law.

*Rudolfo's Demurrer Should Have Been Sustained*

The petition charged that Rudolfo "did willfully and unlawfully trespass upon the grounds of a public school...thereby violating section 63.94 of the Los Angeles Municipal Code." In judging the sufficiency and legal effect of the petition, "[i]t is the language of the charge that controls." (*People* v. *Gonzalez* (1972) 28 Cal.App.3d 1091, 1095 [104 Cal.Rptr. 530].) The petition, therefore, limits the charge to that portion of the municipal code section which makes it a crime to "trespass" on public school grounds. ■ Since it is in the "words of the enactment describing the events," the charge complies with the normal requirement of specificity in criminal cases. (Pen. Code, § 952.) Not all such pleading is, however, constitutionally sufficient. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. (*In re Oliver*, 333 U.S. 257, 273 [68 S.Ct. 499, 92 L.Ed. 682]; *Cooke* v. *United States*, 267 U.S. 517, 536-537 [45 S.Ct. 390, 69 L.Ed. 767]; *In re Digiuro*, 100 Cal.App.2d 260, 261 [223 P.2d 263]; see also *People* v. *Robinson*, 107 Cal.App. 211, 217 [290 P. 470].)" (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5].)

Generally, a charge or an accusation in the terms of the statute is sufficient. However, there is a practical exception which is applicable to the case at bench. In *People* v. *Clenney* (1958) 165 Cal.App.2d 241 [331 P.2d 696], the information charged in the statutory language that the defendant violated section 501 of the Vehicle Code, in that "'he did drive a vehicle while under the influence of intoxicating liquor and in so doing *did an act forbidden by law*, which act proximately caused bodily injury to other persons. . . .'" (165 Cal.App.2d at p. 245.) (Italics added.) The defendant demurred to the charge, and the demurrer was overruled. A conviction followed. In reversing and directing the trial court to sustain the demurrer, Division One of the First District said (*id.*, at pp. 253-254): "It has been frequently stated that the accused must be given sufficient notice of the nature of the charge against him to the end that he may prepare his defense and plead the judgment as a bar to any subsequent prosecution for the same offense. (*In re Hess, supra*, 45 Cal.2d 171; *People* v. *Robinson*, 107 Cal.App. 211 [290 P. 470].)

"Section 952 of the Penal Code provides that an offense may be charged in the words of the enactment describing the offense or in any words sufficient to give the accused notice of the offense of which he is accused.

"Here the allegation is that the defendant 'did an act forbidden by law.' A defendant may be charged with terms of the statute when the statute is sufficient in itself to define the offense. (*People* v. *Steel, supra*, 35 Cal.App.2d Supp. 748.) It must follow that in cases where a violation of the statute depends on a violation of another section, the statute is in itself not sufficient to define the offense. The offense consists of violating two statutes and both must be set out to be sufficient.

"In *People* v. *Mandell*, 35 Cal.App.2d 368 [95 P.2d 704], the court stated that where a statute contains several provisions the violation of any of which is an offense, the statement of the offense should be such as to make the provision relied on apparent.

"There is a presumption that the defendant in a criminal case is innocent. An innocent defendant could not determine what offense he was accused of having committed from the information filed in this case. The remaining allegations in the pleading give him no clue as to what act he violated or what duty he neglected. The rule that it is not necessary to set forth in detail the evidence by which the offense charged is to be proven has no effect on this case.

"The validity of section 501 can be upheld if the acts and duties referred to in that section are confined to those enumerated in the California Vehicle Code. This would give the public adequate notice of the offense included within the act. If the section includes only provisions of the Vehicle Code, then the rule is that the particular section relied upon to supply the violated act or neglected duty should be pleaded or the complaint is subject to a special demurrer. The defendant would then know what offense he is accused of and would have an opportunity to prepare his defense. This construction upholds the validity of the statute and still gives the defendant notice, if he desires to demur. If the defendant does not demur, the pleading in the terms of the statute would be sufficient under section 952 of the Penal Code."

*Clenney* has been followed in subsequent cases. In *People* v. *Jordan* (1971) 19 Cal.App.3d 362 [97 Cal.Rptr. 570], an order dismissing an indictment was affirmed. Several counts stated assault charges without naming the victim when there were two victims involved. The court said (*id.*, at p. 369): "Does a bare literal compliance with section 952 obviate a demurrer under section 1004? We hold it does not, where such compliance fails to give the accused constitutionally adequate notice. *People* v. *Clenney, supra*, 165 Cal.App.2d 241, says a pleading in the words of a statute is not sufficient where the statute itself does not give constitutionally adequate notice of the offense. (There violation of the charged offense depended upon violation of another statute—both statutes must be set out.) *Clenney* deals with the first prong of the constitutional test—whether adequate notice of the nature of the charges is given by allegations in the language, or essentially in the language, of the statute."

In *Choung* v. *People of State of California* (E.D.Cal. 1970) 320 F.Supp. 625, the United States District Court invalidated a conviction of violating California Penal Code section 602.9 (a predecessor to § 626.8), based upon a charge that the defendant unlawfully came into a school building and upon grounds adjacent thereto "'without lawful business thereon.'" (320 F.Supp. at p. 629.) Holding that this charge did not adequately advise the defendant of the charge, the court cited *Clenney* and said (*id.*, at pp. 629-630): "While each of the discussed cases is perhaps distinguishable from the precise problem now at issue, together they enunciate a clearly applicable principle. *An accusatory pleading must be more specific than a statute which defines a material element of the offense by a blanket reference to other forbidden acts.*

"This case readily exemplifies the evil sought to be prevented by the rule. Although the purpose for which the petitioner entered the campus was a crucial element of the offense, *the complaint did not aver which statute or regulation, among a potentially infinite number, the petitioner intended to violate.*" (Italics added.)

In *Sallas v. Municipal Court* (1978) 86 Cal.App.3d 737 [150 Cal. Rptr. 543], the court held that such a defect was not cured by the availability of criminal discovery. The court said (*id.*, at p. 742): "On the other hand, due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence at his trial. (*In re Oliver*, 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499]; *Cooke v. United States*, 267 U.S. 517, 536-537 [69 L.Ed. 767, 773-774, 45 S.Ct. 390]; *In re Hess*, 45 Cal.2d 171, 175 [288 P.2d 5]; *People v. Pond*, 44 Cal.2d 665, 676 [284 P.2d 793]; *People v. Puckett*, 44 Cal.App.3d 607, 611 [118 Cal.Rptr. 884]; *People v. Romo*, 200 Cal.App.2d 83, 87 [19 Cal.Rptr. 179].)

"Parenthetically, we note that in *felony* prosecutions an accused will be advised of the nature of the charge against him by the transcribed grand jury or preliminary hearing testimony, thus ordinarily satisfying due process requirements. (See Pen. Code, §§ 870, 938.1; *People v. Mosher*, 1 Cal.3d 379, 399 [82 Cal.Rptr. 379, 461 P.2d 659]; *People v. Marshall*, 48 Cal.2d 394, 399, fn. 5 [309 P.2d 456].) But such information is not available to the misdemeanor defendant. And patently, the procedures for criminal discovery will not substitute for the due process requirement of notice to an accused of the charge against him. The constitutional right of a criminally accused to be adequately advised of the charge against him is absolute, while one's entitlement to discovery is addressed to the trial court's discretion."

The foregoing authorities are controlling of the instant appeal. ■ The charge in the petition that Rudolfo did willfully and unlawfully trespass in violation of Los Angeles Municipal Code section 63.94 failed adequately to advise him of the charge against him. The term "trespass" in the general or civil context covers virtually any tort. Black's Law Dictionary (5th ed. 1979) defines "trespass" as follows: "Trespass. An unlawful interference with one's person, property, or rights. At common law, trespass was a form of action brought to recover damages for any injury to one's person or property or relationship with another.

"Trespass comprehends any misfeasance, transgression or offense which damages another person's health, reputation or property. King v. Citizens Bank of De Kalb, 88 Ga.App. 40, 76 S.E.2d 86, 91. Doing of unlawful act or of lawful act in an unlawful manner to injury of another's person or property. Waco Cotton Oil Mill of Waco v. Walker, Tex.Civ.App., 103 S.W.2d 1071, 1072. An unlawful act committed with violence, actual or implied, causing injury to the person, property, or relative rights of another. It comprehends not only forcible wrongs, but also acts the consequences of which make them tortious. Mawson v. Vess Beverage Co., Mo.App., 173 S.W.2d 606, 612, 613, 614."

Obviously, if any such meaning is attached to "trespass," it does not fairly inform anyone of the charge so that he may prepare a defense. Reasonably construed, however, the section would refer rather to criminal trespass upon the school property described in the petition. But, as above pointed out, there are numerous diverse and separate kinds of conduct which are characterized as criminal trespass in respect of school property. As in *Clenney*, Rudolfo is here merely advised that he is accused of having violated some such criminal trespass statute but not which one. *Clenney* is, therefore, controlling authority determining the insufficiency of the petition. ■ Certainly, a juvenile defendant being adjudicated a ward by reason of his violation of criminal law is entitled to the same due process protection that is afforded a criminal defendant. (*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428].) We must, therefore, conclude that the demurrer was improperly overruled and that the adjudication must be reversed.

The judgment (order) appealed from is reversed, and the cause is remanded for further proceedings consistent with the views above expressed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied October 30, 1980, and the opinion and judgment were modified to read as printed above.