[Crim. No. 43891. Second Dist., Div. Six. June 28, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD WAYNE VILLA et al., Defendants and Appellants.

## COUNSEL

Stephen N. Dorsi and Michael L. Gums, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian and John K. Van de Kamp, Attorneys General, Edmund D. McMurray and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GILBERT, J.**—Ronald Wayne Villa and Larry Wayne Wall appeal from the judgments (orders granting each of them probation) entered after a jury convicted them of harvesting marijuana (Health & Saf. Code, § 11358; count I) and unlawful possession of marijuana for sale (Health & Saf. Code, § 11359; count II).[1] Villa contends: (1) his conviction was based upon insufficient evidence; (2) the jury was improperly instructed on the definition of "harvesting"; (3) irrelevant evidence of joint ownership of property was admitted to his prejudice; and (4) he was wrongly convicted under a statute which was repealed. Wall contends: (1) the trial court erroneously denied his motion to exclude a deed to the property in northern California taken in the names of both Wall and codefendant Villa; and (2) the trial court's sentence of probation for five years and a fine of $5,000 was so disproportionate to the offense as to be "arbitrary and shocking to the conscience of reasonable men."

We disagree with these contentions and affirm the judgments.

---

[1]The information, filed March 17, 1981, incorrectly designated the statutes under which appellants were charged as Health and Safety Code sections 11358, subdivision (a), and 11359, subdivision (a). Prior to 1976, the respective statutes each included a subdivision (a). (Stats. 1973, ch. 1078, §§ 9, 10.) Said subdivisions were eliminated by amendment in 1976. (Stats. 1976, ch. 1139, §§ 72, 73.)

Appellants' joint notice of appeal, filed prematurely on September 21, 1981, has been treated as an appeal from the judgments (orders granting each of them probation) entered November 17, 1981.

For a few months in 1980, defendant Villa worked as a ranch hand on the 100,000 acre Hearst Ranch which surrounds the Hearst Castle in San Simeon. Villa left his employment on the ranch in July 1980. Sometime later ranch foreman Harlan Brown saw Villa's trailer parked on the ranch property and in September 1980, he saw Villa trespassing on the ranch.

In October 1980, Brown discovered marijuana growing at three separate sites in rugged canyons on the ranch. He reported this to the sheriff who established surveillance at one of the sites where approximately 170 marijuana plants, 8 to 10 feet in height, were growing. An irrigation system composed of plastic pipes running from a nearby creek provided water for the plants. Each plant was surrounded by chicken wire which stood approximately 8 to 12 inches high above the ground. Attached to the chicken wire were rat traps. Nearby was a small campsite with tools, clothes and sleeping bags.

On October 6, 1980, the concealed officers observed Villa and Wall enter the site. Each was carrying a large trash bag from which protruded marijuana stems and buds. When they were approximately 15 feet from the still-concealed officers, Villa pulled down a branch of one of the growing plants, examined it, and said that the plants were "Sensimilla . . . better than Columbian [*sic*]." Wall replied, "These buds[2] are really ready. It's good we are getting some of them out of here." Villa snapped branch ends from a plant and put them in his bag. When they began walking away they were arrested. Wall then told Villa that he had forgotten his jacket. An officer picked up the jacket and discovered two baggies of marijuana in it.

Officers obtained a search warrant and searched Villa's trailer parked on the highway a mile from the site and found marijuana, a scale of the type used in packaging it, and a deed for real estate in northern California, then jointly in the names of Villa and Wall. The marijuana in the two bags the defendants had been carrying was worth $12,000, and the value of all of the plants at the three sites was approximately $300,000.

■ The instruction to the jury on the definition of "harvesting" was proper. The court first gave CALJIC No. 12.24,[3] which states the elements

---

[2] The location notwithstanding, this was not a reference to "Rosebud."

[3] "Defendants are charged in Count I of the information, with the commission of the crime of violation of Section 11358 of the Health and Safety Code. [¶] Every person who plants, cultivates, harvests, dries, or processes any marijuana, or any part thereof, with knowledge that it is marijuana, or a part thereof, is guilty of the crime of violation of Section 11358 of the Health and Safety Code. [¶] In order to prove the commission of such crime, each of the following elements must be proved: [¶] 1. That a person planted, cultivated, harvested, dried, or processed a marijuana plant, and [¶] 2. That such person knew it was a marijuana plant or some part thereof." (CALJIC No. 12.24.)

of the offense prescribed by Health and Safety Code section 11358. The court next gave a special instruction requested by the People as follows: "The word 'harvesting' is defined as the gathering of crops of any kind. [¶] The verb, to 'harvest,' means (a) to gather in (a crop): REAP . . . (b) to gather (a natural product) as if by harvesting." This instruction was based on Webster's Third New International Dictionary.[4]

The court refused to give two instructions on "harvesting" requested by defendants which were based on Webster's New World Dictionary (2d college ed. 1970).[5]

The more comprehensive definition offered by defendants with its catalog of different crops could lead to jury confusion whether marijuana is a crop, and whether the entire season's yield must be gathered to fulfill the requirements of a harvest. The court's instruction properly focused on the act of gathering, which could apply to an entire crop, or a portion of a crop, however small.

■ The court did not err in admitting into evidence a deed of property owned jointly by defendants in Siskiyou County. The deed was found under a bed in the trailer and was relevant to establish joint possession by Villa and Wall of the items in the trailer as well as their possession of marijuana for sale.

■ Defendants' convictions were based on sufficient evidence. The clear inference is that they picked and gathered $12,000 worth of marijuana from an extensive field of plants and placed it in large bags in which to carry it away. In addition, the overheard comments of defendants and the paraphernalia in the nearby trailer constituted substantial evidence from which a reasonable trier of fact could find defendants guilty, beyond a reasonable

---

[4]Webster's Third New International Dictionary (1981) page 1036, defines harvest and harvesting as follows:
   "Harvesting (n) 'an act or instance of gathering in a crop or store . . . .'
   "Harvest (vt) '1a: to gather in (a crop): REAP . . . b: to gather (a natural product) as if by harvesting . . . .'"
[5]The instructions refused were:
   "(1) Harvest—n. [. . . to cut, whence Shear, Short: basic sense 'time of cutting'] 1. the time of the year when matured grain, fruit, vegetables, etc. are reaped and gathered in 2. a season's yield of grain, fruit, etc. when gathered in or ready to be gathered in; crop 3. the gathering in of a crop 4. the outcome or consequence of any effort or series of events [the tyrant's harvest of hate]—vt., vi. 1. gather in (a crop, etc.) 2. to gather the crop from (a field) 3. to get (something) as the result of an action or effort . . . .'
   "(2) Harvest—to gather in a season's yield of grain, fruit, etc. (Webster's New World Dictionary)
   "*verb*: to gather in a crop
   "crop is defined as the yield of any product in one season or place."

doubt, of harvesting within the meaning of the statute. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 575-578 [162 Cal.Rptr. 431, 606 P.2d 738].) This evidence, therefore, demonstrates that Villa was doing more than merely picking a single marijuana flower as his counsel suggests.

■ Villa's further contention that he was wrongfully convicted under a repealed statute is without merit. Count I of the information correctly alleged the elements of the charged offense in the language of Health and Safety Code section 11358 (Pen. Code, § 952) but inadvertently referred to the statute as 11358, subdivision (*a*), rather than 11358. (See fn. 1, *ante.*) In the trial court Villa did not demur, or otherwise object, to this surplusage. (Pen. Code, §§ 1004, 1005.) Consequently, he waived the objection. (Pen. Code, § 1012.) The information gave reasonable notice of the charge, and the surplus "(a)" could be disregarded. (Pen. Code, § 952; *People* v. *Matula* (1959) 52 Cal.2d 591, 598 [342 P.2d 252].) Moreover, the jury instruction on the substantive offense charged in count I properly referred to the statute as section *11358.* (See fn. 3, *ante.*)

■ Contrary to Wall's final contention, the $5,000 fine imposed as a condition of his probation was not "so disproportionate as to be arbitrary and shocking to the conscience of reasonable men." (*In re Lynch* (1972) 8 Cal.3d 410, 424 et seq. [105 Cal.Rptr. 217, 503 P.2d 921].) Each bag carried by defendants contained 10 pounds of high quality sensimilla marijuana buds. The cultivated fields contained large numbers of plants grown in a manner which evidenced the kind of sophisticated cultivation that would make any agronomist proud. The plants were irrigated and protected with chicken wire and rat traps. Thus, the raising of these plants required planning and premeditation. Further, the amount of marijuana involved had a considerable street value. Even though Wall spent some 90 days at a diagnostic facility of the Department of Corrections pursuant to Penal Code section 1203.03, he should be relieved rather than shocked by the court's eminently fair sentence.

The judgments (orders granting each defendant probation) are affirmed.

Stone, P. J., and Abbe, J., concurred.