[No. A024565. First Dist., Div. One. Aug. 26, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES JUNIOR JACKSON, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

_____

\*Pursuant to California Rules of Court, rules 976 (b) and 976.1, this opinion is certified for partial publication. Those portions certified for publication follow. Portions of the text omitted are indicated by double brackets, thus: [[/]].

610

**COUNSEL**

James Alcabes, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Morris Lenk and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HOLMDAHL, J.**—The defendant in this case forced his victim to perform an act of oral copulation on him, then killed her by strangling her and severing her carotid artery.

An error in jury instructions requires, under existing statutory and case law, that defendant's conviction of first degree murder be reversed or reduced to second degree murder. That judgment is reversed.[1]

Defendant's judgment of conviction of forcible oral copulation is affirmed, but remanded for resentencing.

### Statement of Facts

On January 5, 1982, at about 3:45 p.m., Joan Stewart left her home on Scout Road in the Montclair area of Oakland to walk to a shopping area about a 15-minute walk away. She did not return. Joan Stewart's husband found her dead body the next morning, lying among some trees and shrubbery down the hill to the side of Scout Road. The contents of her purse were spilled out near the body, except for her wallet, which was missing.

The presence of sperm in the mouth of the corpse proved that an act of oral copulation had taken place. Multiple scrapes and bruises on Joan Stewart's face, left arm, legs, right hip, abdomen, and back, which had been inflicted before her death, proved that her participation in that act had not been voluntary. She had died as a result of strangulation and a cut on the left side of her neck, which had sliced through her carotid artery.

A web of circumstantial evidence, plus the defendant Charles Junior Jackson's admission to the police of his presence in the area of the crime scene, proved that he had perpetrated the sexual attack on Joan Stewart and had killed her. Defendant does not contest the sufficiency of that evidence on this appeal.

### Procedural History

An information filed in Alameda County Superior Court charged defendant in three counts with murder, forcible oral copulation, and robbery. Forcible oral copulation and robbery were charged as special circumstances in connection with the murder. Use of a deadly and dangerous weapon and intentional infliction of great bodily injury were charged in connection with all three counts. Eight prior felony convictions were charged.

The trial court overruled defendant's demurrer to the information, denied his motions to set aside the information and to exclude evidence of his

---

[1]At oral argument, the Attorney General stated the People's preference for reversal in order to allow retrial. We express no opinion as to whether defendant's consent would be required for a modification of the judgment to reflect a conviction of second degree murder. (Cf. *People* v. *Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555].)

statements to the police, and made other pretrial rulings not material to this appeal. Defendant admitted all eight prior felony convictions.

On February 4, 1983, a jury found defendant guilty of first degree murder and of forcible oral copulation, and not guilty of robbery. The jury found that the allegation of forcible oral copulation as a special circumstance was true, and that the allegation of robbery as a special circumstance was not true. The jury found the deadly and dangerous weapon use allegation and the intentional infliction of great bodily injury allegation true, in connection with both the murder and the forcible oral copulation.

[[/]]*

The trial court sentenced defendant to eight years in prison for forcible oral copulation, and ordered enhancements of three and five years to be served consecutively, for a total of sixteen years. For the murder, the trial court sentenced defendant to life imprisonment without possibility of parole, with a 16-month enhancement for deadly and dangerous weapon use to be served consecutively. [[/]]*

*Refusal to Set Aside the Information*

[[/]]*

*Sufficiency of Weapon Use Enhancement Language*

Each of the three weapon use enhancement clauses of the information was charged in identical language, as follows:

"The District Attorney of the County of Alameda further charges that in and during the commission and attempted commission of the above offense, the said CHARLES JUNIOR JACKSON personally used a deadly and dangerous weapon, to wit: a sharp instrument." Defendant's points and authorities in support of his demurrer to the information contended that this language is "OVERLY VAGUE AND . . . DEMURRABLE . . . FOR UNCERTAINTY."

■ On appeal, defendant contends that the words "a sharp instrument" in the weapon use enhancement clauses of the information do not comply

---

*See footnote, *ante,* page 609.

with the specificity requirements of Penal Code sections 950,[2] 952,[3] and 969c.[4] Defendant specifically cites *People* v. *Perales* (1904) 141 Cal. 581 [75 P. 170] in support of his contention that the words "a sharp instrument" fail to set forth the nature of the weapon which the defendant used, as explicitly required by section 969c. Defendant also alludes to the due process requirement of fair notice of charges, which exists independent of statutory requirements, citing *Mandel* v. *Municipal Court* (1969) 276 Cal.App.2d 649 [81 Cal.Rptr. 173].

The People assume that the grounds for demurrer listed in section 1004[5] are exclusive, and reason as follows. Subdivisions 1, 3, 4, and 5 of section

---

[2]Penal Code section 950 provides:

"The accusatory pleading must contain:

"1. The title of the action, specifying the name of the court to which the same is presented, and the names of the parties;

"2. A statement of the public offense or offenses charged therein."

All statutory references, unless otherwise noted, are to the Penal Code.

[3]Section 952 provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another."

[4]Section 969c provides: "Whenever a defendant uses a weapon or was armed with a firearm under such circumstances as to bring such defendant within the operation of Section 12022 the fact that the defendant so used a weapon or was armed with a firearm may be charged in the accusatory pleading. This charge, if made, shall be added to and be a part of the count or each of the counts of the accusatory pleading which charge the offense at the time of the commission of which the defendant used a weapon or was armed with a firearm. That portion of any count which charges that the defendant used a weapon or was armed with a firearm shall be sufficient if it can be understood therefrom that at the time of his commission of the offense set forth in the count, the defendant used a weapon or was armed with a firearm. *The nature of the weapon or firearm must be set forth.* One such charge may name more than one weapon or firearm. If the defendant pleads not guilty of the offense charged in any count which alleges that the defendant used a weapon or was armed with a firearm, the question whether or not he used a weapon or was armed with a firearm as alleged must be tried by the court or jury which tries the issue upon the plea of not guilty. If the defendant pleads guilty of the offense charged the question whether or not he used a weapon or was armed with a firearm as alleged must be determined by the court before pronouncing judgment." (Italics added.)

[5]Section 1004 provides: "The defendant may demur to the accusatory pleading at any time prior to the entry of a plea, when it appears upon the face thereof either:

"1. If an indictment, that the grand jury by which it was found had no legal authority to inquire into the offense charged, or, if an information or complaint that the court has no jurisdiction of the offense charged therein;

"2. That it does not substantially conform to the provisions of Sections 950 and 952, and also Section 951 in case of an indictment or information;

"3. That more than one offense is charged, except as provided in Section 954;

1004 all allude to the manner in which accusatory pleadings charge *offenses.* Subdivision 2 alludes to sections 950 through 952, all of which deal with the manner of charging *offenses* or *crimes.* Therefore, the People conclude, "a demurrer lies only to test the sufficiency of language charging a *crime, or an offense.*" (Original italics.) In other words, an enhancement allegation, no matter how defective it might be, is invulnerable to a demurrer.

In spite of the fact that defendant cites *Mandel* v. *Municipal Court, supra,* and the People themselves cite *People* v. *Yoshimura* (1976) 62 Cal.App.3d 410 [133 Cal.Rptr. 228], the People ignore a long tradition of the nonstatutory, common law demurrer as a vehicle for constitutional and other attacks on the sufficiency of an accusatory pleading. (In addition to *Mandel* and *Yoshimura,* see, e.g., *People* v. *Clenney* (1958) 165 Cal.App.2d 241 [331 P.2d 696]; *Choung* v. *People of State of California* (E.D.Cal. 1970) 320 F.Supp. 625; *Sallas* v. *Municipal Court* (1978) 86 Cal.App.3d 737 [150 Cal.Rptr. 543]; *In re Rudolfo A.* (1980) 110 Cal.App.3d 845 [168 Cal.Rptr. 338]; *Lamadrid* v. *Municipal Court* (1981) 118 Cal.App.3d 786 [173 Cal.Rptr. 599]; *Byrd* v. *Municipal Court* (1981) 125 Cal.App.3d 1054 [178 Cal.Rptr. 480]; *Ulloa* v. *Municipal Court* (1981) 126 Cal.App.3d 1073 [179 Cal.Rptr. 332]; *Peer* v. *Municipal Court* (1982) 128 Cal.App.3d 733 [180 Cal.Rptr. 137]; *In re Jamil H.* (1984) 158 Cal.App.3d 556 [204 Cal.Rptr. 816].) Contrary to the People's position, erroneous overruling of a nonstatutory demurrer by a trial court is possible, and can result in reversal of a judgment of conviction on appeal. (*People* v. *Clenney, supra,* 165 Cal.App.2d 241.)

The People are correct, however, in pointing out that sections 950 through 952, relating to how crimes and offenses are charged, do not apply to how enhancement allegations are charged. Our inquiry must focus on section 969c, which explicitly requires that a weapon use enhancement allegation must set forth the nature of the weapon.

Defendant apparently assumes that "nature" means "type," and that section 969c, therefore, requires an allegation as to type of weapon: E.g., knife, sword, razor, etc. However, the authority to which defendant refers us does not stand for that proposition. *People* v. *Perales, supra,* 141 Cal. 581 discusses the specificity required for an information charging assault with a deadly weapon. *Perales* concludes that the term "deadly weapon," by itself, is a sufficiently particular statement of the nature of the weapon

"4. That the facts stated do not constitute a public offense;
"5. That it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution."

allegedly used. (*People* v. *Perales, supra,* 141 Cal. at p. 583.) *People* v. *Congleton* (1872) 44 Cal. 92, 94 explains the point at greater length. ▮ "That an indictment for an assault with a deadly weapon, with intent to do bodily injury to another, may in general terms aver the assault to have been made '*with a deadly weapon,*' we have no doubt. . . . [T]he *nature of the weapon,* as being deadly or otherwise, is alone important; and it is essential to aver it in some appropriate way to have been deadly in its character." (Italics in original.) An information charging assault with a deadly weapon need not allege the specific type of deadly weapon claimed to have been used. (*People* v. *De La Roi* (1944) 23 Cal.2d 692, 697 [146 P.2d 225], cert. den. (1946) 329 U.S. 761 [91 L.Ed. 656, 67 S.Ct. 115]; *People* v. *Martin* (1961) 198 Cal.App.2d 322 [17 Cal.Rptr. 808]; *People* v. *Collins* (1953) 117 Cal.App.2d 175, 181 [255 P.2d 59], cert. den. and app. dism. (1953) 346 U.S. 803 [98 L.Ed.334, 74 S.Ct. 33].)

An interpretation of the specificity requirement for pleading the nature of a deadly or dangerous weapon in a weapon use enhancement allegation in harmony with the specificity requirement for pleading the nature of a deadly weapon in an allegation charging assault with a deadly weapon is appropriate.

▮ We hold, therefore, that the allegation of the information in this case, that defendant "personally used a deadly and dangerous weapon, to wit: a sharp instrument," is more than sufficiently particular to withstand a demurrer, on both statutory and constitutional grounds.

### *Authority for Sentence Enhancements*

[[/]]*

▮ Defendant's second complaint is that, in sentencing for forcible oral copulation, the trial court imposed an enhancement of three years for weapon use, but stated that the enhancement was pursuant to section 12022, subdivision (b), which authorizes an enhancement of only one year. Resentencing is necessary, therefore, for forcible oral copulation so that the trial court can clarify its intention.

If, upon resentencing for forcible oral copulation the trial judge wishes to impose a weapon use enhancement, he should either impose one year pursuant to section 12022, subdivision (b) or three years pursuant to section 12022.3, subdivision (a). The court's apparently inadvertent reference to section 12022, subdivision (b) at the first sentencing proceeding does not

---

*See footnote, *ante,* page 609.

require the imposition of an enhancement of only one year on resentencing. (Cf. *People* v. *Villa* (1983) 144 Cal.App.3d 386, 391 [192 Cal.Rptr. 674] [affirming convictions even though information inadvertently charged defendants with violation of a repealed statute].)

*Order of Execution of Sentences on Both*
*Murder and Forcible Oral Copulation Charges*

[[/]]*

*Use of Videotape Recordings*

[[/]]*

*Defendant's Statements to the Police*

[[/]]*

The trial judge in this case, after an evidentiary hearing pursuant to Evidence Code section 402, subdivision (b),[12] did not state the standard of proof according to which he found defendant's statements to the police, constituting admissions, were voluntary. ■ Defendant cites *People* v. *Hinds* (1984) 154 Cal.App.3d 222, 236 [201 Cal.Rptr. 104] for the proposition that the prosecution has the burden of proving beyond a reasonable doubt that an admission is voluntary. The People do not discuss this issue.

Defendant is correct as to the requisite burden of proof. (*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 753 [175 Cal.Rptr. 738, 631 P.2d 446], cert. den. (1982) 455 U.S. 922 [71 L.Ed.2d 464, 102 S.Ct. 1280].) Inasmuch as the crime in this case was committed before June 9, 1982, article I, section 28, subdivision (d) (the "truth-in-evidence" provision) of the California Constitution has no impact on the applicability of *Murtishaw, supra.* (*People* v. *Smith* (1983) 34 Cal.3d 251, 261 [193 Cal.Rptr. 692, 667 P.2d 149];

---

*See footnote, *ante,* page 609.

[12]Evidence Code section 402 provides:

"(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

"(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests.

"(c) A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto; a separate or formal finding is unnecessary unless required by statute."

*People* v. *Williams, supra,* 157 Cal.App.3d at p. 150, fn. 2; *People* v. *Spain* (1984) 154 Cal.App.3d 845, 848, fn. 2 [201 Cal.Rptr. 555].)

However, if defendant's point is to invite this court to presume from a silent record that the trial court applied an incorrect standard of proof, we decline the invitation. It is true that when the California Supreme Court announced the rule requiring that the prosecution prove the voluntariness of a confession beyond a reasonable doubt, the court stated: "[W]e do not think it can be presumed that the trial court applied the correct standard in those cases in which the record is silent in this regard." (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].) However, that statement was made in the light of the confusion which had existed for six years preceding *Jimenez,* as to what the correct standard was. (*Id.,* at pp. 608-609.) No such confusion existed at the time of the trial court's ruling in this case (Dec. 6, 1982). *Murtishaw* had been on the books for over a year, and *People* v. *Lira*■ (Cal.App.), holding that proof of voluntariness for an admission need only be by a preponderance of the evidence, had been depublished for almost a year.

We refuse to speculate that the trial court erroneously assumed that the advent of truth in evidence had abolished the *Murtishaw* standard. Instead, we indulge a presumption that the trial court applied the proper burden of proof, and conclude that any such error must be affirmatively demonstrated on the record before we may find it to exist. (See Evid. Code, § 664; *Ross* v. *Superior Court* (1977) 19 Cal.3d 899, 913-914 [141 Cal.Rptr. 133, 569 P.2d 727]; *In re Fred J.* (1979) 89 Cal.App.3d 168, 175 [152 Cal.Rptr. 327]; cf. *In re Bernadette C.* (1982) 127 Cal.App.3d 618, 625 [179 Cal.Rptr. 688].)

Defendant has made no affirmative demonstration of error. Nor has defendant pointed to any evidence suggesting that defendant's seven-hour wait in an interrogation room while the police checked out his story overbore his will and rendered his statements involuntary. Defendant's history of involvement with the criminal justice system (eight prior felony convictions)[13] and the fact that his conversation with the police ended at his request, both suggest that defendant knew exactly what he was doing and told the police only that which he wanted to tell.

[13]Although defendant had not yet admitted his prior convictions at the time the trial court ruled his statements admissible, these convictions were subject to judicial notice. (Evid. Code, § 452, subd. (d).)

The trial court's finding that the defendant's statements to the police were voluntary is well-supported by the evidence, and the trial court ruled correctly in denying defendant's motion to exclude them.

### Instructions on First Degree Felony Murder

[[/]]*

The judgment of conviction of first degree murder is reversed. The judgment of conviction of forcible oral copulation is reversed as to sentence only, and remanded for resentencing.

Racanelli, P. J., concurred.

**NEWSOM, J.**—I reluctantly agree that we are compelled to reverse Jackson's felony-murder conviction on grounds of instructional error.

I take the opportunity to say that a criminal justice system which regards murder for robbery as a more serious crime than murder committed in the course of forcible oral copulation, is to that extent defective.

---

*See footnote, *ante*, page 609.